UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-14258-CIV-ROSENBERG/MAYNARD

ANTWANUS BRASWELL,

      Petitioner,

v.

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS (DE 1)

      **THIS CAUSE** comes before this Court upon an Order of Reference (DE 3) and the above Petition.  The record before this Court consists of the Petition and Memorandum of Law in Support (DE 1 and DE 9), Response (DE 11), Appendix to the Response (DE 11-1, 11-2, 11-3, and 11-4), Trial Transcripts (DE 12-1, 12-2, and 12-3), and Reply (DE 13).  Having reviewed the record and considered the arguments made therein, this Court recommends that the Petition be **DENIED**.

## INTRODUCTION

      Petitioner Antwanus Braswell ("Petitioner"), a state prisoner at Reception and Medical Center in Lake Butler, Florida, filed a Petition for Writ of Habeas Corpus under 42 U.S.C. § 2254 challenging his convictions in the Tenth Judicial Circuit Court in and for Highlands County, Florida.  DE 1.  On April 18, 2011, Petitioner was charged with one count of lewd battery in violation of Florida Statutes Section 800.04.  DE 11-2 at 2.[1]  The charging document alleged that sometime between July 18 and July 26, 2010 Petitioner engaged in penetrative sexual activity with

---

[1] In citing to the record in this case, the Court cites the Docket Entry and page number assigned by the Court's CM/ECF filing system rather than the exhibit or transcript's preexisting page numbers.

a minor child between 12 and 16 years of age. *Id.* Petitioner went to trial in March 2013. DE 12-1 at 2. A jury was selected on March 11, 2013 and a one-day trial occurred on March 13, 2013. *Id.*; DE 11-2 at 17. The jury found Petitioner guilty. DE 11-2 at 19. On July 1, 2011, Petitioner was sentenced to fifteen years' imprisonment. DE 11-2 at 45-48, 57.

Petitioner's Section 2254 Petition asks the District Court to vacate his judgment and sentence for the following reasons: (1) trial counsel rendered ineffective assistance of counsel by failing to object to the lack of African American jurors on the jury panel prior to the start of *voir dire*; (2) trial counsel was ineffective for failing to impeach the State's main witness (the Victim) at trial; and (3) trial counsel was ineffective for failing to engage in plea negotiations. DE 1.

## BACKGROUND

According to the facts adduced at trial, Petitioner met the Victim and her family (hereafter "Family")[2] in 2009 when Petitioner's son began playing football with the Victim's brother. DE 12-2 at 49-50. Over the next year, Petitioner developed a friendship with the Family. *Id.* Initially, he drove his son and the Victim's brother to football practices together. *Id.* Over time, he began having dinner with the Family at their home, traveling out of town with them, going out on their boat, and sometimes working for the Victim's mother at her cleaning business. *Id.* at 50-51. Occasionally, Petitioner would give the Victim a ride to a friend's house or take her and her brother to McDonald's. *Id.* at 51, 54. There were also instances when Petitioner would fall asleep in the back room of the Family's house and spend the night. *Id.* at 51-52. Prior to July 2010, Petitioner had never made the Victim feel uncomfortable or did anything to indicate an inappropriate interest in her. *Id.* at 54.

---

[2] Out of respect for the privacy of the Victim and her Family, the undersigned refrains from specifically identifying them by name in this Report and Recommendation.

One night in July 2010, Petitioner spent the night at the Family's residence. DE 12-2 at 55. At about 3:00 a.m., he went into the Victim's room, woke her up, and asked if she would come to the back room and watch television with him because he could not sleep. *Id.* The back room was a small room at the back of the Family's house with a love-seat couch and flat screen television outfitted with a loud surround sound system. *Id.* at 53, 78-79. After watching television together for approximately ten minutes, Petitioner put his hand on the Victim's leg. *Id.* at 58. The Victim, who was fifteen years old at the time, asked Petitioner what he was doing, to which he replied "It's okay . . . Don't worry." *Id.* at 54, 58. Petitioner then began to move his hand up the Victim's leg. *Id.* at 58. Over the Victim's protests, Petitioner shoved her down, held her arms, and removed the shorts she was wearing. *Id.* at 58-59. Petitioner then forcibly raped her. *Id.* at 59. During the attack, the Victim cried, screamed, and begged Petitioner to stop, but was unable to push him away. *Id.* at 59-60. After approximately ten minutes, Petitioner released the Victim, who put on her shorts and returned to her room. *Id.* After returning to her room, the Victim heard a noise in the kitchen. *Id.* at 60. She peeked out of her room and saw Petitioner wetting a rag in the sink. *Id.* She then observed Petitioner return to the back room and scrub the loveseat where she had bled. *Id.* at 60-61.

Initially, the Victim did not tell anyone about Petitioner's attack. DE 12-2 at 61, 71-72. Petitioner promised that if she did not tell anyone he would not come around anymore. *Id.* at 62. After about a month, however, Petitioner came back to the Family's house. *Id.* The Victim then told her mother what Petitioner had done. *Id.* at 62-63, 71. Law enforcement was contacted, and Detective Barbara Hair of the Highlands County Sheriff Office's Special Victims Unit responded. *Id.* at 62, 87-89. Detective Hair took statements from the Family, including statements by the Victim, and collected evidence from the house. *Id.* at 89-90.

On April 18, 2011, Petitioner was charged with one count of lewd battery in violation of Florida Statute 800.04 in connection with the attack.  DE 1; 11-2 at 2.  Petitioner was represented throughout his criminal prosecution and trial by Breezi Stanislaus, Esq.  *See* DE 11-2 at 13, 15, 17.  Petitioner went to trial on March 13, 2013.  *See* DE 11-2 at 17.  At the conclusion of jury selection, Ms. Stanislaus raised an objection to the composition of the jury pool.  DE 12-1 at 196.  She argued that the jury pool was not an accurate cross-section or representation of Highlands County, Florida, because it contained no African Americans.  *Id.* at 196-97.  The State responded that the population of Highlands County is not predominantly African American, that the jury pool was drawn randomly, and that no African American jurors were struck.  *Id.* at 197.  The trial court questioned why Ms. Stanislaus waited until the conclusion of jury selection to raise this concern after observing the jury pool for nearly five hours and not requesting a new venire.  *Id.* at 198-99.  Nonetheless, after hearing brief arguments on the issue, the trial court overruled the objection on its merits.  *Id*. at 198-205, 207.

The State called five witnesses at Petitioner's trial: the Victim; the Victim's father; Detective Barbara Hair; Jennifer Licata, a forensic analyst for the Florida Department of Law Enforcement; and Steven Ray Darby, a fellow prisoner with whom Petitioner spoke about the assault after his arrest.  *See* DE 12-1 at 4-5.  Ms. Stanislaus conducted a cross-examination of all five witnesses.  *Id.*

On March 13, 2013, the jury found Petitioner guilty of lewd battery.  DE 11-2 at 19.  On July 1, 2013, Petitioner was sentenced to fifteen years' imprisonment, fined, and designated as a sexual offender.  DE 11-2 at 45-48, 57, 62.

Petitioner appealed his conviction to Florida's Second District Court of Appeal on July 1, 2013.  DE 11-2 at 64.  Ms. Stanislaus did not represent Petitioner for his direct appeal; instead he

was represented by attorneys from the firm O'Brien Hatfield, P.A. *See* DE 11-2 at 66, 94, 121, 126. Petitioner raised four grounds in his direct appeal: (1) the trial court erred in denying his motion in limine to exclude evidence that Petitioner was incarcerated when interviewed by law enforcement; (2) the trial court erred in denying Petitioner's motion for judgment of acquittal; (3) Petitioner's sentence was excessive; and (4) cumulative error. *See* DE 11-2 at 66-94. The Second District Court of Appeal affirmed Petitioner's conviction, *per curiam*, without written opinion. DE 11-2 at 129. A Mandate was issued on March 2, 2015. DE 11-2 at 131.

On March 24, 2016, Petitioner sought post-conviction relief under Florida Rule of Criminal Procedure 3.850, challenging his conviction and sentence. DE 11-2 at 134. O'Brien Hatfield, P.A., continued to represented Petitioner for his state post-conviction proceeding and remains Petitioner's counsel to-date. *See* DE 11-2 at 158, 215; DE 1; DE 6 at 2; DE 13 at 5. Petitioner's 3.850 motion raised six grounds for relief. DE 11-2 at 134-158; *see also* DE 1 at 3. As relevant to the Petition pending before this Court, Petitioner argued: (1) trial counsel rendered ineffective assistance of counsel by failing to object to the lack of African American jurors on the jury panel before *voir dire* concluded and, as a result, Petitioner's constitutional rights were violated; (2) trial counsel rendered ineffective assistance of counsel when she failed to impeach the Victim; and (3) trial counsel rendered ineffective assistance of counsel when she chose to depose the Victim instead of participating in plea negotiations. *Id.*

On July 11, 2018, the Honorable Peter F. Estrada of the Tenth Judicial Circuit Court in and for Highlands County issued a written Order denying Petitioner's motion for post-conviction relief. DE 11-3 at 2-8. Petitioner appealed the denial of his 3.850 motion to the Second District Court of Appeal. DE 11-4 at 2. He filed a brief in support of his appeal on December 13, 2018 and the State waived filing a brief in response. DE 11-4 at 5, 8-36. On May 24, 2019, the Second District

Court of Appeal affirmed the denial of Petitioner's 3.850 motion, *per curiam*, without written opinion, DE 11-4 at 38.  A Mandate was issued on June 24, 2019, DE 11-4 at 40.

Petitioner then filed the instant Petition for Writ of Habeas Corpus on July 26, 2019, arguing that his conviction and sentence were obtained in violation of the United States Constitution.  DE 1.  Petitioner advances three arguments: (1) trial counsel rendered ineffective assistance by failing to properly object to the lack of African American jurors on the jury panel prior to the beginning of jury selection; (2) trial counsel rendered ineffective assistance by failing to impeach the state's main witness at trial; and (3) trial counsel rendered ineffective assistance by failing to engage in plea negotiations.  DE 1 at 5, 7, 10.

## STANDARD OF REVIEW

### A.  Standard Under the Antiterrorism and Effective Death Penalty Act

Petitioner's federal habeas petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Title 28 U.S.C. § 2254(a) permits a federal court to issue "a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" if that custody is "in violation of the Constitution or laws or treaties of the United States."  The issuance of a writ is limited, however, by the purpose of AEDPA, which is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted).  The AEDPA establishes a formidable barrier to state prisoners seeking federal habeas relief because it is based on the principle that "state courts are adequate forums for the vindication of federal rights."  *See Downs v. Sec'y, Fla. Dep't of Corrs.*, 738 F.3d 240, 256 (2013).

Section 2254 applies at the end of a greater course of judicial review.  Section 2254(d) assumes that a petitioner already exhausted his claims using the state's post-conviction avenues of relief to obtain an adjudication on their merits.  The Eleventh Circuit directs the focus of inquiry to the last merits adjudication by the state court.  As applied to this case, that is the unwritten *per curiam affirmed* opinion that Florida's Second District Court of Appeal rendered to affirm the denial of Petitioner's rule 3.850 post-conviction motion.  DE 11-4 at 38.  Even though the *per curiam affirmed* adjudication is unwritten and thus gives no explanatory basis, it still counts as a merits determination, and it still is entitled to deference.  *See Reed v. Sec'y, Fla. Dep't of Corrs.*, 767 F.3d 1252, 1261 (11th Cir. 2014).

While the deference remains, the fact that the Second District Court of Appeal offered no reasons for the affirmance means the reviewing federal court must "look through" to the last adjudication that does provide a relevant rationale.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  As applied here, that means this Court looks through to the Order issued by Judge Estrada denying the various grounds asserted in Petitioner's Motion for Post-conviction Relief.  DE 11-3 at 2-8.  This Court assumes that the appellate court adopted the reasoning and rationale of that Order.  *Wilson*, 138 S. Ct. at 1192.

The next step in the analysis is to identify the legal basis that entitles the petitioner to habeas corpus relief.  That is, to identify the constitutional or federal law that was violated.  Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254.

Thus, the first part of Section 2254(d)(1) asks whether the state court's denial was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Id*. The phrase "clearly established Federal law" refers to the holdings, as opposed to the *dicta*, of the Supreme Court's opinions in existence when the state court decided the post-conviction claims. *See Downs*, 738 F.3d at 256-57 (adding that it includes a binding circuit court decision that says whether the particular point in issue is clearly established Supreme Court precedent). For a claim based on the ineffective assistance of counsel, for example, the governing standard comes from the Supreme Court's seminal *Strickland v. Washington*, 466 U.S. 668 (1984) opinion. The phrase "contrary to" means that the state court decision contradicts the Supreme Court on a settled question of law or holds differently than the Supreme Court on a set of materially indistinguishable facts. *See Downs*, 738 F.3d at 257. A state court's decision can be contrary to the governing federal legal standard either in its result (the denial of relief) or in its reasoning.

The second part of Section 2254(d)(1) asks the reviewing federal court to determine whether the state court's denial "involved an unreasonable application of" clearly established federal law. An <u>unreasonable</u> application of federal law is not the same as a merely <u>incorrect</u> application of federal law. *See Downs*, 738 F.3d at 257. The standard tests whether the state court's application of the legal principle was objectively unreasonable in light of the record before the state court at the time. An objectively unreasonable application of federal law occurs when the state court identifies the correct legal rule but unreasonably applies, extends, or declines to extend it to the facts of the case. *See Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Section 2254(d)(1) tests the legal correctness of the state court's decision, but it does so through a highly deferential lens. The degree of error must be substantial and beyond dispute. The state court's decision survives Section 2254(d)(1) review so long as some fair-minded jurists could agree with the state court, even if others might disagree. *See Downs*, 738 F.3d at 257.

While subsection (1) of Section 2254(d) tests the <u>legal</u> correctness of the state post-conviction court's denial of relief against controlling federal case law, subsection (2) of Section 2254(d) sets forth the standard by which a federal court reviews the state post-conviction court's findings of <u>fact</u>. Section 2254(d)(2) asks whether the state post-conviction court based its denial "on an unreasonable determination of the facts" based on the evidence before it at the time. As with the Section 2254(d)(1) legal analysis, a reviewing federal court is to consider the state court's findings of fact through a deferential lens. The state court's finding of fact is not unreasonable just because the reviewing federal court would have reached a different finding of fact on its own. So long as reasonable minds might disagree about the finding of fact, the state court's finding stands. *See Downs*, 738 F.3d at 257. Indeed, the state court's fact determinations are presumed to be correct. Section 2254(e)(1) places the burden on the petitioner to rebut that "presumption of correctness by clear and convincing evidence." Even if the state post-conviction court did make a factual error, its decision still should be affirmed if there is some alternative basis sufficient to support it. *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).

Obviously then Section 2254(d) creates a standard of review that is highly deferential to the state court's denial of the claim. The reviewing federal court must give the state post-conviction court the benefit of the doubt and construe its reasoning towards affirmance. *See Lynch v. Sec'y, Fla. Dep't of Corrs.*, 776 F.3d 1209 (11th Cir. 2015). To warrant relief under Section 2254(d), a petitioner must show that the state court's ruling was "so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is the degree of error a petitioner must show before this Court may override the state post-conviction court's decision and overturn the finality of the conviction and sentence.

### B. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *Strickland*, 466 U.S. at 684-85. Defendants in state court prosecutions have such right under the Fourteenth Amendment. *Minton v. Sec'y, Dep't of Corrs.*, 271 F. App'x 916, 918 (11th Cir. 2008). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001). Counsel is also not required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate: (1) that his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) that he suffered prejudice as a result of that deficient performance. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *Id.* at 690; *see Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) ("To

establish deficient performance, a defendant must show that his counsel's representation fell below an objective standard of reasonableness in light of prevailing professional norms at the time the representation took place."). A court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*), *cert. den'd*, 531 U.S. 1204 (2001). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel has in making tactical decisions. *Id.* at 1317. The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. *Id.* at 1316. Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that no competent counsel would have taken the action that his counsel did take.'" *Hittson*, 759 F.3d at 1263 (quoting *Chandler*, 218 F.3d 1305 at 1315).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *Id.* at 697.

Further, a federal court reviewing a state post-conviction court's determination does not apply *Strickland de novo*, "but rather, through the additional prism of [Section 2254(d)] deference." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012). "Thus, under this doubly deferential standard, the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. And if, at a minimum, fair-minded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was

not unreasonable and [Section 2254(d)] precludes the grant of habeas relief." *Id.* (internal citation omitted); *but see Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (*en banc*) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of a *Strickland* claim applies only to *Strickland's* performance prong, not to the prejudice inquiry). "This 'double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Id.* (quoting *Evans v. Sec'y, DOC, FL*, 699 F.3d 1249, 1268 (11th Cir. 2012)).

## EXHAUSTION

The exhaustion doctrine precludes a state prisoner from seeking federal habeas relief before he has fairly presented his constitutional claims in state court and exhausted available state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 844 (1999); Title 28 U.S.C. § 2254(b). Both the factual substance of a claim and the federal constitutional issue, itself, must have been expressly presented to the state court to achieve exhaustion for purposes of federal habeas corpus review. *Baldwin v. Reese*, 541 U.S. 27 (2004). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). Exhaustion may be accomplished on direct appeal. If not, in Florida, it may be accomplished by the pursuit of a Rule 3.850 motion and the appeal of its denial. *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979).

Respondent raises two concerns as to the exhaustion of Petitioner's first and second claims. DE 11 at 14-15, 17. Respondent concedes that Petitioner's first claim is exhausted in so far as it asserts a claim that counsel was ineffective for failing to object to the lack of African American

venire members prior to the beginning of jury selection. *Id.* at 14-15. However, to the extent the claim also advances "an Equal Protection argument or alleg[es] a broader Sixth Amendment violation than the ineffective assistance of counsel claim raised in the State court," Respondent contends such claims have not been properly exhausted. *Id.* As to Petitioner's second claim, Respondent again concedes that the claim was exhausted as to whether trial counsel was ineffective in failing to impeach the Victim with her prior inconsistent statements under Florida Statutes § 90.608(1). *Id.* at 17. Respondent contends, however, that to the extent Petitioner argues counsel was ineffective for failing to impeach the Victim to show bias or advances a separate argument attacking the sufficiency of the DNA evidence presented at trial, such claims were not exhausted. *Id.*

Following a review of the record, the undersigned finds that Petitioner has met the exhaustion requirement. As to Claim I, Petitioner does not advance separate Equal Protection or Sixth Amendment claims, but rather discusses both in the context of his ineffective assistance of counsel argument. The same is true with Claim II, in which Petitioner discusses the sufficiency of the DNA evidence as part of his argument on the prejudice prong of the *Strickland* analysis. Neither claim raises new issues that were not previously presented to the state court. All three claims in the Petition were raised in Petitioner's 3.850 motion and denied by the state post-conviction court. DE 11-2 at 134-158; 11-3 at 2-8. All three claims were also raised in Petitioner's appeal of the state post-conviction court's decision. The Second District Court of Appeal affirmed the post-conviction court's decision. DE 11-4 at 38. Thus, Petitioner has successfully exhausted his state court remedies in accordance with Section 2254.

## TIMELINESS

Respondent concedes that the Petition is timely filed but notes that Petitioner's Memorandum in Support of the Petition was filed outside of the limitations period. DE 11 at 6. Thus, Respondent contends that to the extent the Memorandum raises additional claims instead of merely expounding on those in the timely filed Petition, such claims should be dismissed as time-barred. *Id.* The undersigned does not find that the Memorandum raises any separate issues not advanced in the Petition. Therefore, the Court accepts the Section 2254 Petition as timely filed.

## DISCUSSION

Petitioner raises three claims for relief:

I.      The Petitioner's constitutional right to a fair trial was violated when counsel failed to properly object to the lack of African-American jurors on the petitioner's panel, prior to the beginning of jury selection, and as a result, the Petitioner's constitutional rights were substantially violated. DE 1 at 5.

II.     The Petitioner was denied his right to effective assistance of counsel when counsel failed to impeach the state's main witness at trial. DE 1 at 7.

III.    The Petitioner was denied his right to effective trial counsel when counsel failed to engage in plea negotiations. DE 1 at 10.

After reviewing the pleadings and evidence of record, for the reasons stated herein, this Court recommends that the Petition be denied.

### *Claim I*

Claim I alleges that Petitioner's constitutional rights were violated when his trial counsel, Ms. Stanislaus, failed to object to the lack of African American jurors in the Petitioner's panel prior to the beginning of jury selection. DE 9 at 4-7. Petitioner explains that at the beginning of his case the prospective panel of jurors entered the courtroom but there were no African Americans in the venire. *Id.* at 5. He notes that trial counsel did not bring this fact to the trial court's attention

prior to the beginning of *voir dire*. *Id.* at 4-5. Instead, after *voir dire* was complete and a jury selected, but before the jury was sworn in, Ms. Stanislaus first raised an objection to the lack of African American individuals on the panel. *Id.*; *see* DE 12-1 at 196 (trial transcript). Specifically, when asked if the proposed jury was acceptable, Ms. Stanislaus responded, "Your Honor, the panel would have been acceptable to the defense; however, there aren't any African-Americans on the panel and I don't believe that it is an accurate cross section or representation of the community of Highlands County." DE 12-1 at 196. She further clarified that the objection "is to the panel as a whole" because "there aren't any African-Americans that were in the pool." *Id.*

While the trial court expressed concern that Ms. Stanislaus had not raised the objection until after *voir dire* was completed, the court nonetheless heard oral argument from the parties on the objection before overruling it. *See* DE 12-1 at 196-205. During the colloquy with the court, both parties presented demographic information related to the objection. *Id.* at 199-202. Ms. Stanislaus proffered that the United States Census Bureau estimated 16.5% of Florida's population in 2011 was African American. *Id.* at 199, 201. In response, the State argued that the 2010 census data specifically for Highlands County, Florida—the county in which the jury was being selected—showed only 9% of the country's population was African American. *Id.* at 200, 202-03. The State further noted that no African Americans had been struck and none of the potential jurors had given any indication of racial bias. *Id.* at 197. The trial court then ruled as follows:

> [Y]ou have made no representation based on fact or evidence that this jury was not randomly selected, and you have no basis, then, to determine that this jury – you haven't asked any questions about their racial bias or anything else from this group of all white and Hispanic jury venire – would in any way affect your client's right to a fair trial. Your objection is noted. Your objection is overruled.

*Id.* at 205.

Although he did not appeal the trial court's ruling regarding the lack of African Americans in the jury pool, *see* DE 11-2 at 66-94, Petitioner raised the issue in his 3.850 motion in the context

of an ineffective assistance of counsel claim, *id.* at 145-47.    In ruling on that claim, the state post-

conviction court found:

> [T]he record reflects that defense counsel did raise objection to the cross-section of
> the jury pool, preserving the issue for appeal.  Defense counsel argued that the jury
> pool members must represent a cross section of the community, citing various case
> law and census data.  The State argued that only nine percent of the population in
> Highlands County were African American based on the 2010 census data
> (emphasizing that would be nine out of every 100 people), and further argued that
> the jury was randomly selected.  *See Gordon v. State*, 704 So. 2d 107, 110-111 (Fla.
> 1997) (outlining the three-prong test for determining a prima facie violation of the
> fair cross-section requirement).   After hearing argument, the court ruled that a
> randomly selected jury was sent to the courtroom and overruled the defense
> objection.  Despite the defense attorney waiting to motion until after the jury was
> chosen (but prior to the juror selection announcement and the jury being sworn in),
> the court still ruled on the merits and substance of the objection rather than
> dismissing the issue due to untimeliness or procedural deficiency. Accordingly, the
> court finds Defendant was not prejudiced.  The court also finds counsel was not
> ineffective as objection was made and the issue was preserved for appellate
> purposes.  Claim one is denied.

DE 11-3 at 3.

Petitioner relies on the Eleventh Circuit's decision in *Davis v. Secretary of Department of*

*Corrections*, 341 F.3d 1310 (11th Cir. 2003), to argue that counsel was constitutionally deficient

in failing to object to the jury panel before the end of *voir dire*.  DE 9 at 7.  In *Davis*, the petitioner

asserted that he received ineffective assistance of counsel when his attorney made a *Batson*[3]

objection during *voir dire* but failed to renew the objection after *voir dire* as required by Florida

law.  *Id.* at 1312-13; *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993) (requiring trial counsel to

renew an <u>already</u> rejected *Batson* challenge a second time at the conclusion of *voir dire* to preserve

the *Batson* claim for appeal).  On direct appeal, Florida's Third District Court of Appeal declined

---

[3] A *Batson* objection is an objection to the validity of an opposing parties' peremptory strike of a potential juror on
the grounds that the strike was used to exclude the potential juror on an improper discriminatory basis, including race
or sex.  *See Batson v. Kentucky*, 476 U.S. 79, 89 ("[P]rivilege to strike individual jurors through peremptory
challenges[] is subject to the commands of the Equal Protection Clause"); *see also Edmonson v. Leesville Concrete
Co.*, 500 U.S. 614, 616 (1991) (extending *Batson* to jury selection in civil trials); *J.E.B. v. Alabama ex rel. T.B.*, 511
U.S. 127, 146 (1994) (extending *Batson* to peremptory challenges based on sex).

to address Davis' "well taken" *Batson* claim because his trial attorney failed to renew the objection as required and, thus, it had not been properly preserved for appeal. *Davis*, 341 F.3d at 1312. In reviewing the denial of Davis' Section 2254 petition, the Eleventh Circuit found "there is no question that Davis's counsel performed deficiently in failing, as required by Florida's *Joiner* rule, to renew Davis's *Batson* challenge before accepting the jury." *Id.* at 1314. Given the Court of Appeals' comment that the claim was "well taken," the Eleventh Circuit also found a reasonable probability that Davis' conviction would have been reversed on appeal had trial counsel preserved the *Batson* challenge. The Court clarified that "[w]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." *Id*. at 1316. Thus, in considering Petitioner's *Strickland* claim here, this Court must determine (1) whether counsel was constitutionally deficient for untimely raising the fair cross-section objection such that the issue was not preserved for appeal; and (2) how Petitioner would have fared on appeal had counsel preserved a fair cross-section claim for review.

Regarding the first prong—constitutionally deficient performance—Petitioner claims Ms. Stanislaus failed to preserve the fair cross-section challenge by not raising it prior to examination of the jury panel. In so doing, Petitioner relies on Florida Rule of Criminal Procedure 3.290 and *Cargill v. State*, 121 So. 3d 1157 (Fla. Dist. Ct. App. 2013). DE 13 at 2-3. Rule 3.290 provides that a challenge to the panel of prospective jurors "shall be made and decided before any individual juror is examined, unless otherwise ordered by the court[,] . . . shall be in writing and shall specify the facts constituting the ground of the challenge." Fla. R. Crim. P. 3.290. Interpreting Rule 3.290, Florida's First District Court of Appeal in *Cargill* found that a defendant failed to preserve for

appellate review a fair cross-section challenge to the jury panel where the objection was raised before trial but after *voir dire* was completed.  121 So. 3d at 1157, 1159.

Petitioner's reliance on *Cargill* fails to establish deficient performance for two reasons. First, *Cargill*'s holding that a lawyer who makes an untimely fair cross-section objection fails to preserve the objection for appeal was not issued until September 18, 2013, months after jury selection in Petitioner's case, which occurred on March 11, 2013.  *See Cargill*, 121 So. 3d at 1157; DE 12-1 at 2; DE 11-2 at 17.  Petitioner points to no governing case law before *Cargill* that reached this result.  Thus, it is not clear that at the time Ms. Stanislaus was selecting the jury, a failure to follow the timing set forth in Rule 3.290 necessarily rendered the fair cross-section issue unpreserved for appellate review.  That is especially true here where the trial court proceeded to decide the issue on its merits, despite it having been untimely raised.

Second, unlike the defendants in *Cargill* and *Davis* who actually raised their jury related challenges on direct appeal and obtained a ruling from the governing appellate court that the issues were not properly preserved, Petitioner in this case did not raise the fair cross-section issue on direct appeal.  As a result, there is no appellate court ruling in this case on whether the fair cross-section challenge was or was not properly preserved.  At trial, Ms. Stanislaus seemed to consider her late objection sufficient to preserve the issue for review and the trial judge did not disagree. DE 12-1 at 200 ("For appellate purposes, it must [be] raised to be preserved, and that is what I have done."); *id.* at 201 ("What I'm preserving here on the record is that the jury pool as brought up is not a cross section of the community of Highlands County.").  The 3.850 court also perceived Ms. Stanislaus as having properly preserved the issue for appeal.  As the Florida Supreme Court has emphasized, "[c]laims alleging that a defendant's jury was not a fair cross section of the community should be raised on direct appeal."  *Melton v. State*, 949 So. 2d 994, 1014 (Fla. 2006)

(*citing Reaves v. State*, 826 So. 2d 932, 936 n. 3 (Fla. 2002)).  Petitioner did not do so here.  Having failed to obtain a ruling from an appeals court that this issue was not properly preserved, and having not put forth case law demonstrating that this was clearly established at the time of his trial, Petitioner has failed to show the post-conviction court's conclusion on this issue was contrary to clearly established federal law or an unreasonable determination of the facts.  Petitioner has not overcome the strong presumption that Ms. Stanislaus' performance was reasonable.  *Strickland*, 466 U.S. at 669 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Even if Petitioner could show deficient performance, he has not established prejudice under the standard *Davis* sets forth.  *Davis* requires a petitioner raising a claim that trial counsel failed to preserve an issue for appeal to show a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved.  *Davis*, 341 F.3d at 1316.  Petitioner has failed to meet this requirement.   A defendant may challenge the composition of a venire under the Sixth Amendment's fair cross-section requirement if members of a distinct group were excluded from the jury pool.  *Taylor v. Louisiana*, 419 U.S. 522, 702 (1975).  For such a challenge to succeed, an individual must prove that: (1) the group alleged to be excluded is a distinctive group in the community, (2) the representation of the group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) the underrepresentation is due to the systematic exclusion of the group in the jury selection process.  *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  There is no question here that Petitioner could have established the first prong of the *Duren* test as African Americans represent a distinctive group in the community.  *United States v. Carmichael*, 560 F.3d 1270, 1280 (11th Cir. 2009).  However, Petitioner has not demonstrated a reasonable likelihood that he would have met the second or third

requirements. In analyzing the second prong—whether African Americans were fairly and reasonably represented in the jury pool—courts compare the difference between the percentage of African Americans in the population eligible for jury service and the percentage of African Americans in the pool. *Id.* In the Eleventh Circuit, "[i]f the absolute disparity between these two percentages is ten percent or less, the second element is not satisfied." *United States v. Grisham*, 63 F.3d 1074, 1078-79 (11th Cir. 1995). In responding to Ms. Stanislaus' argument at trial about the percentage of African Americans in Florida, the prosecutor proffered that only 9% of the population in Highlands County was African American in 2010. DE 12-1 at 198. Having set forth no evidence to the contrary, Petitioner cannot show a reasonable likelihood that he would have prevailed on the underrepresentation element. Similarly, with the third element—which requires evidence of systematic exclusion—Petitioner offers no proof. He acknowledges as much in his Reply in this Court. DE 13 at 3 ("The State next argues that trial counsel presented no evidence to suggest that the jury selection process was anything but random and as a result, there cannot be any error. Braswell does not dispute this argument."). Absent purposeful racial gerrymandering, "selecting juries at random from a predetermined geographical area provides a sufficiently diverse jury pool to ensure impartiality." *Grisham*, 63 F.3d at 1080. Petitioner has not shown any probability of systematic exclusion of African Americans from the jury pool. Because Petitioner would not have met the second or third element, he fails to show a reasonable likelihood of a more favorable outcome on appeal and, thus, cannot show prejudice as required for his ineffective assistance claim.

Having failed to demonstrate either prong of *Strickland*, Petitions first claim should be denied.

*Claim II*

In Claim II, Petitioner alleges he was denied his right to effective assistance of counsel because trial counsel failed to impeach the Victim.  DE 9 at 8-14.  Regarding this issue, the state post-conviction court held:

> [A] review of the statements provided by Defendant (appendix B to the motion) compared with the transcripts of record do not indicate any "substantially different" or impeachable testimony by the victim, and the record also indicates defense counsel did attack the credibility of the victim by questioning law enforcement regarding the victim's statement. Defense counsel highlighted inconsistencies in both her opening and closing statements, and during her questioning of witnesses.  *See attached trial transcripts, pages 252-254 and 461-470.*

> The victim consistently indicated her hands were being held by Defendant (*see page 13 of statement to law enforcement, first page of written statement, and trial testimony at page 265 266*); she consistently indicated that she went to her room after the altercation, although during the law enforcement interview she was not asked if she later left her room (*see page 13 of statement to law enforcement, first page of written statement, and pages 267 and 274 of trial transcript*); and she consistently indicated Defendant told her it was "okay" / "don't be scared" / "calm down" / "don't worry" during the altercation (*see page 7 of statement to law enforcement, first page of written statement, and pages 264-266 of trial transcript*). In her statement to law enforcement (*page 13*) she indicated that Defendant was "on my hair" and in her written statement (*first page*) she indicated that Defendant's "other arm was holding a grip of my hair".  During trial, defense counsel asked the victim if "at any point did his [Defendant's] hand grab your hair" and the victim responded "no".  Nevertheless, the victim repeatedly indicated that Defendant asked her to come watch TV with him, reassured her everything was "okay", held down her hands, put his penis inside of her, she eventually ran to her room, and that the altercation lasted ten minutes. *See attached trial testimony pages 263-267, written statement, and pages 3, 6, and 7 of statement to law enforcement.*

> . . .

> After review, the court finds counsel was not ineffective.  Counsel did draw attention to the discrepancies between the victim's statement to law enforcement and her trial testimony – thereby attacking the victim's credibility for the jury's consideration.  The court additionally finds that Defendant was not prejudiced; confidence in the outcome is not undermined given all the evidence at trial, including testimony regarding Defendant's DNA (semen) being found on a couch cushion from the victim's home[.]

DE 11-3 at 3-4.

Petitioner argues that the state court's findings are not supported by the record and conflict with *Strickland*. DE 9 at 8. First, as to Ms. Stanislaus' performance, Petitioner contends that the Victim provided three different statements to law enforcement prior to trial and his lawyer was constitutionally deficient in failing to impeach her. *Id.* at 8-11. Second, regarding prejudice, Petitioner disputes the state court's conclusion that he could not show prejudice because of other evidence in the case, including DNA. DE 9 at 12-14. Petitioner casts doubt on the DNA evidence presented at trial by noting that he was not a match to two of the DNA samples collected from the Family's couch. *Id.* He then argues that the fact he occasionally slept at the Family's residence on that couch provides a reasonable explanation as to why his DNA might be on that piece of furniture. *Id.* at 14.

Petitioner's arguments as to Claim II are meritless. The state post-conviction court's analysis is not contrary to *Strickland* or an unreasonable determination of the facts. As to counsel's performance, a decision regarding cross examining a witness is "a tactical one well within the discretion of a defense attorney." *Broadwater v. United States*, 347 F. App'x 516, 519 (11th Cir. 2009) (internal quotation omitted). Counsel's decision to cross-examine and the manner of the cross-examination are strategic decisions entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181, 1185 (11th Cir. 2001).

Petitioner contends that trial counsel should have impeached the Victim by offering evidence to the jury of three written statements made by the Victim to police during the investigation. Under Florida law, prior inconsistent statements can be admitted as substantive evidence "*if* the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement *and* the statement is . . . [i]nconsistent with the declarant's testimony *and*

was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in

a deposition." *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004) (citing Fla. Stat. § 90.801(2)(a)

(emphasis in original)).  Thus, for the Victim's written statements to be admissible as evidence,

Petitioner had to show both that the Victim's written statements were inconsistent with her

testimony on the stand and that the statements were given under oath at a trial, hearing, "other

proceeding" or deposition.

> The Florida Supreme Court has further explained the inconsistency requirement:

>> To be inconsistent, a prior statement must either directly contradict
>> or be materially different from the expected testimony at trial.  The
>> inconsistency must involve a material, significant fact, rather than
>> mere details.  *State v. Smith*, 573 So .2d 306, 313 (Fla. 1990).  Nit-
>> picking is not permitted under the guise of prior inconsistent
>> statements.  *See Morton v. State*, 689 So. 2d 259, 264 (Fla. 1997)
>> ("[C]aution should be exercised in permitting impeachment of a
>> witness who has given favorable testimony but simply fails to recall
>> every detail unless the witness appears to be fabricating."), *receded
>> from on other grounds*, *Rodriguez v. State*, 753 So. 2d 29 (Fla.2000);
>> *see also Florida Evidence* § 608.4.  If a witness has made a prior
>> inconsistent statement concerning a collateral matter, cross-
>> examining counsel may question the witness about the statement,
>> but must 'take the answer' and cannot present extrinsic evidence to
>> prove the prior inconsistent statement.  *Florida Evidence* § 608.4.

*Id*. at 569.

Having reviewed the record in this case, the undersigned agrees with the post-conviction

court that, overall, the Victim's prior statements were materially consistent with her trial

testimony.  Indeed, some of the "inconsistencies" Petitioner alleges are not inconsistencies at all

but rather are restatements of the same details. *E.g.*, *compare* DE 11-2 at 181 (the Victim's written

statement that Petitioner "was holding [her] hands up with one arm") *with* DE 12-2 at 58-59 (the

Victim's trial testimony that Petitioner "held [her] hands up" and "placed [her arms] up"). To the

degree inconsistencies exist, they are so slight as to be inconsequential.  *See Johnson v. Alabama*,

256 F.3d 1156, 1186 (11th Cir. 2001) ("Claims that an attorney should have cross-examined further on inconsequential matters do not establish constitutionally deficient performance.").

In addition, Petitioner has not established that the written statements the Victim provided to police were given "under oath" at a trial, hearing, other proceeding, or deposition. The Florida Supreme Court held in *State v. Delgado-Santos*, 497 So. 2d 1199 (Fla. 1986), that a statement given under oath during a police investigation is not a statement given at an "other proceeding" and, consequently, is not admissible as substantive evidence under Section 90.801(2)(a). *See also Ellis v. State*, 622 So. 2d 991, 997-98 (Fla. 1993) (finding that a pretrial statement by a witness during an interview with the prosecutor could not be admitted as substantive evidence because the interview was not an "other proceeding" within the meaning of the rule). Thus, to the degree Petitioner asserts that Ms. Stanislaus should have introduced the Victim's written statements to police, that argument necessarily fails because such written statements did not meet the last requirement of Section 90.801(2)(a).[4]

When it comes to impeachment of a witness, ineffective assistance has been found only where "counsel failed to impeach the key prosecution witness with prior inconsistent testimony *where the earlier testimony was much more favorable to the defendant*." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (emphasis added). Ineffective assistance will not be found "merely because other testimony might have been elicited from those who testified." *Id.* (internal quotation omitted). To the degree there were differences in the Victim's statements, her prior statements were certainly not "much more favorable" to Petitioner than her testimony at trial. The Victim

---

[4] The Court notes that the Victim's written statement "was used to get an injunction against [Petitioner]." DE 11-2 at 148-49. While this implies the statement may have been used in relation to a legal proceeding, there is insufficient evidence in the record to indicate that the undated and unsigned statement "was given under oath subject to the penalty of perjury at . . . [an] other proceeding." See Fla. Stat. § 90.801(2)(a); DE 11-2 at 181-82 (the Victim's written statement).

experienced a horrific and traumatizing assault perpetrated on her in her own home by someone she believed to be a family friend.  Given that the Victim's statements were generally consistent in material respects, and that statements given under oath during a police investigation cannot be substantively admitted under Section 90.801(2)(a), counsel's failure to introduce extrinsic evidence of the Victim's prior statements was not constitutionally deficient.  *Fugate*, 261 F.3d at 1219.  *See also Broderick v. United States*, 2020 WL 6280808, at *1 (11th Cir. Aug. 13, 2020) (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)) (noting that counsel is not ineffective in failing to raise a non-meritorious claim); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) (same).

Moreover, despite Petitioner's characterization to the contrary, the record shows that trial counsel did point out to the jury inconsistencies between the Victim's statements and her trial testimony.  First, Ms. Stanislaus highlighted these differences in her opening statement, asserting:

> You're going to hear about the story of [the Victim] indicating that Mr. Braswell put his hands over her head.  You're also going to hear her say that, at the same time, he was grabbing a lock of her hair.  Listen to that.
> . . .
> . . .
> In the end, I believe that, in the combination of the testimony, the inconsistent testimony from [the Victim], . . . that you're going to find Mr. Antwanus Braswell not guilty[.]

DE 12-2 at 47.  Then, she inquired about these details during her cross-examinations of the Victim and Detective Hair.  She elicited testimony from the two witnesses as to the inconsistencies between the Victim's testimony and her prior statements on how Petitioner held down her arms, whether he grabbed her hair, and whether the Victim left her room after the incident to observe Petitioner cleaning the couch.  For example, her inquiry of the Victim included the following:

| Ms. Stanislaus: | At any point did [Petitioner's] hand grab hold of your hair? |
|---|---|
| The Victim: | No. |
| Ms. Stanislaus: | Do you remember making a statement to Detective Barbara Hair about that? |
| The Victim: | No, ma'am. |

*Id.* at 65.  Ms. Stanislaus then obtained the following testimony from Detective Hair.

| Ms. Stanislaus: | And when you asked [the Victim] the details, you specifically asked her how it occurred, correct? |
|---|---|
| Det. Hair: | Yes. |
| . . . | |
| Ms. Stanislaus: | Do you remember [the Victim] indicating that [Petitioner] also held a grip of her hair? |
| Det. Hair: | At one point, yes. |

*Id.* at 106.  Thus, the record is clear that Ms. Stanislaus provided evidence to the jury of conflicting statements by the Victim.  And "[w]hen an attorney 'substantially impeache[s]' a witness, no claim for ineffectiveness can succeed unless the petitioner comes forward with 'specific information' which 'would have added to the impeachment of the State's witnesses.'" *Johnson*, 256 F.3d at 1186 (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636-37 (11th Cir. 1985)).  Petitioner has not offered any such evidence in this case.  Given the potential negative consequences of impeaching a minor victim on previous statements that were so substantially similar to her trial testimony, it was reasonable for Ms. Stanislaus to choose to simply to highlight these inconsistencies rather than attack the Victim more directly through additional impeachment attempts.

Regarding the prejudice prong, Petitioner has not established a reasonable probability that more aggressive impeachment of the Victim would have changed the outcome of the trial.  "Absent a showing of a single specific instance where cross-examination arguably could have affected the

outcome of either the guilt or sentencing phase of the trial," a petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland. Fugate*, 261 F.3d at 1219 (internal quotation omitted). As discussed in detail above, the Victim's prior statements were substantially consistent with her trial testimony in all material respects and Ms. Stanislaus presented the inconsistencies to the jury. There is no indication that any additional impeachment attempts would even have been beneficial to Petitioner's case, let alone affected the outcome of the trial. *See Ethingor v. United States*, No. 07-20599-CR, 2013 WL 12333164, at *8 (S.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, No. 12-22356-CIV, 2014 WL 12802603 (S.D. Fla. Feb. 10, 2014) (finding a petitioner's bare statement that a reasonable probability exists the trial would have been different if a witness were impeached fails to show prejudice under *Strickland*'s second prong).

Finally, although the Victim was the prosecution's key witness, her testimony was not the State's only evidence in this case. While Petitioner emphasizes that he was not a match to two of the DNA samples collected from the Family's couch, he does concede he was a match for the other four, three of which were confirmed to be Petitioner's sperm. DE 9 at 14-15. The State also produced a witness with whom Petitioner discussed the incident while awaiting trial. DE 12-3 at 32-34. Accordingly, Petitioner has failed to show that the state court's conclusions on this claim were unreasonable so as to warrant federal habeas relief. The state court's resolution of Claim II should not be disturbed.

### Claim III

Lastly, Petitioner alleges in Claim III that he was denied his right to effective counsel when Ms. Stanislaus chose to depose the Victim rather than engage in plea negotiations. DE 9 at 14-16. Petitioner explains that Ms. Stanislaus knew the State would not enter into plea negotiations if she deposed the Victim. *Id.* at 16. Therefore, he argues, she should not have deposed the Victim, who

had already given several statements to law enforcement, particularly because Petitioner had only "one previous criminal incident," making him "the perfect candidate" for a favorable plea offer. *Id.*

The state post-conviction court found this claim to be "conjectural and conclusory" based on the timeline of the case and the record. DE 11-3 at 5. Judge Estrada noted that Ms. Stanislaus filed her notice of appearance on September 16, 2011 and the Victim was not deposed until September 21, 2012—more than a year later. *Id.* Thus, there was more than a year during which the parties could have engaged in plea negotiations. The 3.850 order also identified specific instances in the record when Petitioner did not object to or question the decision to depose the Victim, even though it concluded plea negotiations, and did not contradict statements that "he wanted to defend himself by going to trial and basically exercising his Constitutional Right." DE 11-3 at 5 (quoting transcript at DE 11-3 at 128). Lastly, Judge Estrada found there was no indication the State would have even made a plea offer that would have been accepted by Petitioner regardless of the Victim's deposition being taken. *Id.* at 5. He explained:

> Defendant was serving a 12-year term of probation for "unlawful sexual activity with a minor" at the time the offense in this case occurred. The State's position was for the maximum penalty of 15 years in prison - the same position as the Department of Corrections and the victim's family. The prosecutor even stated, "I wish he could be sentence to more for a case like this. I think he deserves it."

*Id.*

The undersigned agrees with the post-conviction court's analysis of Petitioner's arguments as to Claim III. To prove prejudice, Petitioner has to establish that the outcome of the plea process would have been different but for his counsel's deficient performance. *See Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (discussing prejudice where ineffective advice results in the rejection, rather than acceptance, of a plea). Here, Petitioner offers only conclusory and speculative assertions that

the State "would have" provided him with a plea offer.  DE 9 at 16.  But, "[a] defendant has no right to be offered a plea," *Missouri v. Frye*, 566 U.S. 134, 148 (2012), and Petitioner offers no other evidence that a plea offer would have been made in this case.  Indeed, given the prosecutor's statement at the sentencing hearing that he wished Petitioner could be sentenced to more than the maximum sentence for a case like this,[5] it seems unlikely that the State would have agreed to anything less than the maximum sentence (which is what Petitioner received after trial).  *See Argo v. Sec'y, Dep't of Corr.*, 465 F. App'x 871, 875 (11th Cir. 2012) (*Strickland* requirements not met where the petitioner offered only speculation that a plea offer "would have been forthcoming"). In addition, Petitioner's after-the-fact assertion that he would have accepted whatever plea deal was offered but for his counsel's deposition of the Victim is also speculative and belied by the record in this case.  *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [a] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.").  The 3.850 court pointed out multiple opportunities in the trial record where Petitioner could have voiced his concern that offers were no longer on the table due the Victim's deposition.  Instead, he affirmed that he was ready to proceed with trial.  DE 11-3 at 4.  In short, Petitioner has failed to establish, as he is required to do, a reasonable probability that a plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.  *Lawson v. Sec'y, Dep't of Corr.*, 785 F. App'x 722, 725 (11th Cir. 2019). Thus, the undersigned recommends that Petitioner's third claim be denied.

---

[5] The sentencing transcript also reveals that Petitioner was serving a twelve-year term of probation for unlawful sexual activity with a minor at the time he assaulted the Victim in this case.  DE 11-3 at 124-25, 130.

## <u>EVIDENTIARY HEARING</u>

A federal court must consider an evidentiary hearing if such a hearing could enable a habeas petitioner the opportunity to prove factual allegations, which, if true, would confer the right to habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The decision whether to grant an evidentiary hearing is left to this Court's discretion. This Court must review the available record and determine whether an evidentiary hearing is warranted. To guide the determination, the Eleventh Circuit directs this Court to consider four factors. First, this Court must consider whether there are disputed facts concerning the petitioner's claims for which the petitioner did not receive a full and fair hearing from the state post-conviction court. Second, this Court must consider whether the petitioner's fact allegations, if he could prove them true, would entitle him to prevail on his Petition. Third, in making that determination of whether the petitioner can prevail on the merits of his claims, this Court must keep in mind the deference that Section 2254 gives to the state post-conviction court's ruling. Fourth, this Court must consider the nature of the petitioner's fact allegations. If they are merely conclusory and unsupported by specifics, the evidentiary hearing request may be denied. *See Boyd v. Allen*, 592 F.3d 1274, 1304-05 (11th Cir. 2010).

The record here presents no disputes of fact that require resolution. This Court was able to assess Petitioner's claims based on the record as it is without the need to develop it further. Thus, Petitioner's request for an evidentiary hearing is denied.

## <u>CONCLUSION</u>

The record shows that Petitioner received the full benefit of a jury trial where he was able to challenge the State's case against him and to proffer conflicting and exonerating evidence. Even if there were ways his trial counsel could have presented his defense better (viewed, of course, with the benefit of hindsight and with knowledge of the jury's decision), the record does not show

how any of those potential shortcomings constitute ineffective assistance under *Strickland*. Because Petitioner cannot demonstrate how the complained-of errors would have resulted in a more favorable outcome, he does not prevail on his claims for relief.  Moreover, Petitioner does not overcome the deference given to the state court's determinations on Section 2254 review and the deference given to trial counsel under *Strickland*.

  **ACCORDINGLY**, this Court recommends to the District Court that the Petition for Writ of Habeas Corpus (DE 1) be **DENIED**.

  The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case.  Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein.  *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

  **DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 16th day of July, 2021.

           _____
           SHANIEK M. MAYNARD
           UNITED STATES MAGISTRATE JUDGE